1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   RYAN E. PORTER,                          Case No. 11cv01050 BTM (BLM)

12                              Plaintiff,     **ORDER DENYING APPLICATION**
                                              **FOR TEMPORARY RESTRAINING**
13         v.                                  **ORDER AND SETTING**
                                              **EVIDENTIARY HEARING FOR**
14   GEORGE NEOTTI, et al.,                    **MOTION FOR PRELIMINARY**
                                              **INJUNCTION**
15                              Defendants.

16

17         On Tuesday, November 22, 2011, the Court held a hearing on Plaintiff's "Motion for

18   Emergency Preliminary Injunction and/or Temporairly [sic] Restraining Order" (Dkt. No. 11).

19   The Court construes Plaintiff's motion as both an application for a temporary restraining order

20   and a motion for a preliminary injunction.  For the reasons set forth below, the Court DENIES

21   Plaintiff's application for a temporary restraining order, DEFERS RULING on Plaintiff's motion

22   for a preliminary injunction, and ORDERS the parties to appear for an evidentiary hearing on

23   the issue of whether Plaintiff sufficiently has exhausted his available administrative remedies.

24

25                                    **Facts**

26         On May 12, 2011, Plaintiff Ryan E. Porter, a state prisoner incarcerated at Richard J.

27   Donovan Correctional Facility ("RJD"), filed a pro se civil rights action pursuant to 42 U.S.C.

28   § 1983 claiming that the conditions of his incarceration have violated and continue to violate

the Eighth and Fourteenth Amendments.

Plaintiff alleges that in March 2010 he began to find "feces, dirt, razor blades, dead mice, disinfectant, [and] bleach" in the food provided to Sensitive Needs Yard ("SNY" or "protective custody") inmates such as himself.  Plaintiff further alleges that this contamination is caused by "general population" inmates, who are responsible for preparing the food provided to the SNY inmates and who have a motive and an opportunity to contaminate the SNY inmates' food.  Plaintiff claims that he has suffered "severe [medical] complications" (id. at 8) resulting from ingesting contaminated food beginning in June 2010, for which he has received inadequate medical attention.[1]  Plaintiff alleges that RJD personnel have retaliated against him on numerous occasions as a result of his efforts to file administrative appeals relating to the conditions of his incarceration.  The alleged retaliation includes denial of mail, denial of medical care, denial of food, unwarranted cell searches and confiscation of property, and on one occasion a severe beating by multiple prison guards.  Plaintiff alleges that the contamination of SNY food is ongoing, as are his medical problems.  Lastly, Plaintiff claims that RJD staff have deliberately obstructed the processing of his administrative appeals.

On September 22, 2011, Plaintiff filed the present motion (Dkt. No. 11), in which he makes two requests:  First, Plaintiff requests an "order preventing the 'general population' inmates from making, preparing, handling, and delivering 'protective custody' inmates['] food" (Dkt. No. 11 at 5), and instead "allow[ing] 'protective custody' inmates to make and handle and prepare 'protective custody' inmates['] own food[] or order[ing] the 'culinary free staff' to make, prepare, and handle 'protective custody' inmates['] food at all times" (id. at 13).  Second, Plaintiff requests an order preventing "the defendants from denying emergency medical care, . . . retaliation by delaying legal mail, unwarranted cell searches and body [searches], and illegal confiscation of personal property, where the only intent is to harass."

---

[1]Specifically, Plaintiff claims that by the first week of November 2010 he began to experience severe abdominal pain, severe dizzyness, severe bloating and fullness making it painful to eat and drink water, green and chalky bowel movements, and painful indigestion. Plaintiff claims that he has collapsed multiple times since the fall of 2010 as a result of his illness.

1  (Id. at 2.)

2      Defendants' arguments in opposition to Plaintiff's motion include their contentions that

3  Plaintiff has failed to exhaust his administrative remedies (Dkt. No. 60 at 3-5) and that

4  Plaintiff has failed to allege he will suffer irreparable injury (id. at 8-9).

5

6                                    **Discussion**

7      The same standards generally apply to temporary restraining orders and preliminary

8  injunctions. Credit Bureau Connection, Inc. v. Pardini, 726 F. Supp. 2d 1107, 1114 (E.D. Cal.

9  2010). Thus, a plaintiff seeking a temporary restraining order "must establish that he is likely

10 to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

11 preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

12 public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

13

14     Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e et seq., "exhaustion

15 of *available* administrative remedies is required for any suit challenging prison conditions, not

16 just for suits under [42 U.S.C.] § 1983." Woodford v. Ngo, 548 U.S. 81, 85 (2006) (emphasis

17 added). "Proper exhaustion demands compliance with an agency's deadlines and other

18 critical procedural rules . . . ." Id. at 90. Defendants contend that because Plaintiff has not

19 exhausted his available administrative remedies, he cannot proceed on any of his claims and

20 therefore cannot establish that "he is likely to succeed on the merits."

21     In the present case, Plaintiff is required to pursue his grievances through the system

22 established by the California Department of Corrections and Rehabilitation before raising

23 those claims in Federal court. See Cal. Code Regs. tit. 15, § 3084 et seq. In order to

24 exhaust available administrative remedies within this system, a prisoner must proceed

25 through several levels of appeal: (1) informal review, (2) first formal written appeal on a CDC

26 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4)

27 third level appeal to the Director of the California Department of Corrections and

28 Rehabilitation ("Director"). See Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal.1997)

1   (citing Cal.Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review

2   satisfies the exhaustion requirement under § 1997e(a).  See id. at 1237-38.  Plaintiff

3   conceded at the November 22, 2011 hearing that he has not received a decision from the

4   Director's level of review on any appeals addressing the issues contained in the present

5   motion.

6   Plaintiff is not required to exhaust administrative remedies under this system if such

7   remedies are "effectively unavailable."  Nunez v. Duncan, 591 F.3d 1217, 1226 (9th Cir.

8   2010).  "Failure to exhaust may be excused where [an] inmate takes 'reasonable and

9   appropriate steps to exhaust [a] claim,' but is precluded from doing so by the mistake or

10  misconduct of a prison official."  Jacobs v. Woodford, No. 1:08cv00369, 2011 WL 1584429,

11  at *3 (E.D. Cal. Apr. 26, 2011) (citing Nunez, 591 F.3d at 1224-25; Ngo v. Woodford, 539

12  F.3d 1108, 1110 (9th Cir. 2008)).  Specifically, In Sapp v. Kimbrell, 623 F.3d 813 (9th Cir.

13  2010), the Ninth Circuit held that "improper screening of an inmate's administrative

14  grievances renders administrative remedies 'effectively unavailable' such that exhaustion is

15  not required under the PLRA."  Id. at 823.  To show the appeal process is "unavailable," the

16  inmate must establish (1) that he actually filed a grievance or grievances that, if pursued

17  through all levels of administrative appeals, would have sufficed to exhaust the claim that he

18  seeks to pursue in federal court, and (2) that prison officials screened his grievance or

19  grievances for reasons inconsistent with or unsupported by applicable regulations.  Id. at

20  823-24.

21  At this stage in the proceedings, Plaintiff has failed to introduce sufficient evidence to

22  establish that he is likely to succeed in proving that administrative remedies were "effectively

23  unavailable" to him.  The Court therefore DENIES Plaintiff's application for a temporary

24  restraining order.

25  However, in determining whether Plaintiff has sufficiently exhausted his administrative

26  remedies, "the [C]ourt may look beyond the pleadings and decide disputed issues of fact" in

27  a procedure that is "closely analagous to summary judgment."  Wyatt v. Terhune, 315 F.3d

28  1108, 1119-20 (9th Cir. 2003).  As such, the Court hereby confirms the schedule set forth

4

orally at the November 22, 2011 hearing and ORDERS that there shall be an evidentiary hearing at 9:00 a.m. on December 28, 2011, on the issue of whether Plaintiff's administrative remedies were "effectively unavailable" to him.  Additionally, the Court ORDERS that there shall be a status conference at 11:00 a.m. on December 22, 2011.  If the Court ultimately determines that Plaintiff is likely to prevail on his argument that he is excused from exhausting his administrative remedies, the Court will schedule a second evidentiary hearing to address the merits of Plaintiff's claim for preliminary injunctive relief.

**IT IS SO ORDERED.**

Dated: December 15, 2011

**HONORABLE BARRY TED MOSKOWITZ**
United States District Judge