1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    RYAN E. PORTER,                          Case No.      11cv1050 BTM (BLM)
      CDCR #V-40311
12

13                               Plaintiff,
                                              **ORDER:**
14
                                              **(1) GRANTING IN PART AND**
15                                            **DENYING IN PART DEFENDANTS'**
                                              **MOTION TO DISMISS PLAINTIFF'S**
16            vs.                             **FIRST  AMENDED COMPLAINT**
                                              **PURSUANT TO FED.R.CIV.P. 12(b)**
17                                            **AND 12(b)(6); AND**

18    GEORGE NEOTTI, et al.,                  **(2) ISSUING ORDER TO SHOW**
                                              **CAUSE WHY DEFENDANTS**
19                                            **SHOULD NOT BE DISMISSED FOR**
                                              **FAILING TO PROSECUTE**
20                                            **PURSUANT TO FED.R.CIV.P. 4(m)**
                                 Defendants.
21

22

23

24            Currently before the Court is Defendants Akbari, Allamby, Alvarado, Camarena, Casillas,

25    Chance, Choo, Cobb, Davis, Estrada, Flournoy, Gambel, Garza, Germano, Gonzalez, Hernandez,

26    Jones, Kennedy, Lacurom, Le, Marquez, Neotti, Ochoa, Pauley, Pulido, Rink, Rivera, Rodriquez,

27    Romero, Samson, Sanchez, Scharr, Seeley, Stricklin, Walker, Wall, Williams, and Wilson's

28    ("Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("FAC").  (ECF No.

80.)   Plaintiff has filed an Opposition to Defendants' Motion to Dismiss (ECF No. 111) to which Defendants have filed a Reply (ECF No. 115.)

**I.    Plaintiff's Factual Allegations**

Plaintiff claims arise out of an alleged series of events relating to the contamination of Plaintiff's food.  Plaintiff alleges that, beginning in March 2010, his food was contaminated and he suffered resulting medical complications.  Plaintiff names as defendants 43 different members of the Richard J. Donovan Correctional Facility's ("RJD") staff and administration, and broadly alleges that these defendants violated his rights under the First, Eighth, and Fourteenth amendments by failing to protect him from the food contamination, providing inadequate medical attention for his resulting medical complications, retaliating and using excessive force against him for attempting to file grievances relating to the food contamination and his resulting medical care, and denying him due process.  Plaintiff seeks injunctive and declaratory relief, as well as compensatory and punitive damages.

This overview of Plaintiff's allegations proceeds chronologically, setting forth the events forming the basis of Plaintiff's claims and the defendants involved in each event.  The following facts are taken from Plaintiff's verified First Amended Complaint (ECF No. 66) ("FAC"), and do not represent findings of the Court.

1.    March-June, 2010:  Discovery of food contamination, initial reports

In March 2010, Plaintiff began to find "feces, dirt, razor blades, dead mice, disinfectant, [and] bleach" in the food provided to RJD's Sensitive Needs Yard ("SNY" or "protective custody") inmates, including himself.  (FAC ¶ 52.)  Plaintiff alleges that "general population" inmates, who are responsible for preparing the food provided to the SNY inmates, were responsible for the contamination.  (Id. ¶¶ 52-54)

Around this time, Plaintiff showed to Defendants Sgt. Stricklin and Correctional Officer ("C/O") B. Jones a "food tray that had feces and dirt in the food[.]"  (Id. ¶ 55)  Defendants Stricklin and Jones failed take any action.

Between April and June 2010, Plaintiff filed four administrative appeals regarding the food contamination.  Plaintiff received no relief from these appeals. (Id.)

1      2.      June-September 2010:  Onset of chronic stomach condition

2          Beginning in June 2010, Plaintiff began to experience stomach symptoms as a result of

3   the food contamination.  (Id. ¶¶ 63, 74-75.)  Plaintiff filed a sick call slip, but received no

4   medical treatment.  After filing a second sick call slip, he was seen by a nurse and told that he

5   would be "put on a waiting list."  (Id. ¶ 63.)  He filed a third sick call slip in July 2010, and was

6   seen by a nurse.  (Id. ¶ 64.)

7          In August 2010, Plaintiff experienced "severe diarrhea" and "feverish symptoms," and

8   filed another sick call slip.  (Id. ¶ 68.)  Three weeks after filing the slip, he was seen by a nurse,

9   provided Imodium tablets for his diarrhea, tested with an electrocardiogram, and told that he

10  would eventually see a doctor.  (Id.)  In September 2010, Plaintiff "continued to try to exhaust

11  [his] administrative remedies and seek medical attention.  To no avail."  (Id. ¶ 69.)

12      3.      October 2010:  First collapse

13         At the end of October 2010, Plaintiff collapsed on the floor of his cell, and his cell mate

14  attempted to call for help.  (Id. ¶ 70.)  Defendant Jones came to Plaintiff's cell, but ignored the

15  calls for medical attention.  At some point thereafter, Sgt. Luna, a non-party to this litigation,

16  arrived and took Plaintiff to see a nurse, whereupon he received a medical evaluation and was

17  put on a list to see a doctor.  (Id. ¶ 70.)

18  4.      November 2010:  Worsening of symptoms and medical treatment

19         In November 2010, Plaintiff began to suffer "severe [medical] complications" including

20  "severe abdominal pain, severe dizz[i]ness, severe bloating and fullness [making it] painful to

21  eat and drink water, . . . bowel movements [that were] green [and] really chalky looking, [and]

22  painful indigestion."  (Id. ¶ 73.)  Defendant Registered Nurse ("R/N") Estrada took Plaintiff to

23  the central infirmary, diagnosed him with the flu, and provided him with IV fluids and

24  medication.    (Id. ¶ 78.)  Plaintiff reported the food contamination problem to Defendant

25  Estrada, and stated that he had eaten spaghetti several days prior that had been contaminated with

26  feces, but Defendant Estrada ignored these complaints and asked Plaintiff if he had received a

27  psychological evaluation.  (Id. ¶¶ 74-77.)

28  / / /

At or around this time, Plaintiff also saw Defendant Dr. Seeley, and told Defendant Seeley about his stomach problems and the food contamination.  Dr. Seeley ignored the complaint regarding food contamination, and told Plaintiff that his stomach problems would probably pass.  (Id. ¶¶ 79-80.)

5.   December 2010:  Ongoing symptoms and medical treatment

At some time in December 2010, Plaintiff's "symptoms became too unbearable," and he collapsed.  (Id. ¶ 81.)  Plaintiff's cell mate called for help, and Defendant Jones refused to respond.  Eventually, someone else called for help.  Defendant Estrada arrived and made derogatory comments to Plaintiff.  (Id. ¶¶ 82-84.)  Plaintiff was placed in a wheelchair, and Defendant Jones wheeled him to the back of his housing facility and left him on a bench, "out in the cold," in only "a pair of boxers, socks, and a white t-shirt." (Id. ¶ 85.)  Eventually, two other inmates had to help carry Plaintiff back to his cell.  (Id.)

Plaintiff's "unbearable" symptoms continued the next day, and his cell mate called for help once more.  (Id. ¶ 86.)  Defendant C/O Chance arrived and initially refused to call for help, but eventually did after arguing with Plaintiff's cell mate "for 5 or 6 minutes."  (Id. ¶ 87.) Defendant Estrada arrived and reluctantly took him to the central infirmary, where Plaintiff received treatment.  (Id. ¶ 88.)

Two days later, Plaintiff himself called for help, and he was taken to Chula Vista Sharp Memorial Hospital, where he received a CAT scan.  (Id. ¶¶ 89-91.)  Plaintiff attempted to report the food contamination issue to the doctor at the hospital, but the transport officers accompanying him interrupted, and told the doctor that Plaintiff was "psychologically disabled." (Id.)   The hospital staff recommended to prison officials that they take Plaintiff to a gastrointestinal specialist.  (Id. ¶ 92.)  Plaintiff was sent back to RJD, where his symptoms continued.  (Id. ¶ 91.)

6.   December 2010:  Letters to Defendants Neotti, Hernandez, and Chu

Plaintiff wrote letters to Defendants Neotti (former warden), Hernandez, and Dr. Ivy Chu, forwarding copies of his grievances regarding food contamination.  These letters received no reply.  (Id. ¶ 93.)  On December 7, 2010, Plaintiff sent a follow-up letter to Defendant Neotti.

1  (Id. ¶ 94, Ex. 2.)

2    7.    January 6, 2011:  Clinic visit and "pruno" incident

3    On or about January 6, 2011, Plaintiff was called to the medical clinic at his housing

4  facility.  Defendant C/O Alvarado initially prevented Plaintiff from entering the clinic and

5  verbally harassed him, but subsequently let him in.  (Id. ¶¶ 95-96.)

6    During Plaintiff's visit, the attending nurse informed Plaintiff that Defendant Jones had

7  told her that Plaintiff was making "jailhouse wine" (or "pruno"), and that the pruno was causing

8  his symptoms.  (Id. ¶ 97.)

9    Also during that visit, Defendant Jones found a batch of pruno in another cell and falsely

10  wrote Plaintiff up for it.  Plaintiff was found "not guilty" at a subsequent disciplinary hearing.

11  (Id. ¶¶ 98-100, Ex. 3.)

12    8.    January 28, 2011:  Visit with Dr. Seeley

13    Defendant Seeley called Plaintiff in for a visit on January 28, 2011, at which Plaintiff

14  once again complained of his ongoing symptoms and reported ongoing food contamination.  Dr.

15  Seeley was dismissive of these complaints and told Plaintiff to leave.  (Id. ¶¶ 101-104.)

16    At that point, Defendant Alvarado grabbed him by the throat.  Defendant Alvarado

17  subsequently falsely accused Plaintiff of pushing him, and Plaintiff was placed in administrative

18  segregation.  (Id. ¶¶ 104-105.)

19    9.    February 16, 2011:  Disciplinary hearing

20    On February 16, 2011, Plaintiff attended a hearing regarding the incident with Defendant

21  Alvarado at the January 28, 2011 doctor's visit.  Defendant Lieutenant E. Garza prevented

22  Plaintiff from calling his witnesses at that hearing.  (Id. ¶¶ 106-107.)

23    10.    February 2011:  Additional Grievances

24    Plaintiff filed a grievance against unnamed medical staff on February 2, 2011, for failing

25  to respond to an emergency call and failing to report the food contamination.  (Id. ¶ 115.)

26    On February 23, 2011, Plaintiff filed a grievance reporting "a cell search that was

27  conducted with the specific intent to seek and destroy [Plaintiff's] documentation and legal work

28  to prevent Plaintiff from filing grievances[.]"  (Id. ¶ 113.)  Plaintiff does not name any

1  defendants in connection with this incident.

2      On February 28, 2011, Plaintiff filed another grievance against the medical staff for

3  failing to respond to an emergency call.  (Id. ¶ 114.)

4      11.    March 3, 2011:  Denial of mail

5      On March 3, 2011, Defendant Alvarado threw away Plaintiff's mail, and then approached

6  Plaintiff's cell and stated:  "You['re] a little bitch, I ain't giving you shit, fuck you and your

7  mail!"  (Id. ¶ 116.)  Plaintiff alleges that he filed a grievance regarding this incident, but that

8  Defendant Cobb "refused to process it." (Id.)

9      12.    March 10, 2011:  Denial of food

10      On March 10, 2011, Defendant C/O Marquez denied Plaintiff and his cell mate their

11  breakfast and lunch, and stated:  "Quit filing staff complaints against my boys and causing us

12  problems."  (Id. ¶ 118.)

13      13.    March 20, 2011:  Unprovoked beating

14      On March 20, 2011, Defendants Sgt. Scharr, Sgt. S. Wall, C/O J. Rodriguez, C/O C.

15  Wilson, C/O H. Le, C/O M. Casillas, C/O R. Davis, C/O H. Romero, and C/O C. Martinez

16  participated in entering Plaintiff's cell and beating and kicking Plaintiff in response to Plaintiff's

17  complaint that he was experiencing "severe abdominal pain" and that he was not getting the

18  medical attention he had requested.  (Id. ¶¶ 121-128.)  These defendants then falsely wrote

19  Plaintiff up for blocking the food port.  (Id.)  Defendant R/N Chavez refused to treat Plaintiff

20  for his resulting injuries.  (Id. ¶ 130.)  On April 18, 2011, Plaintiff was found "not guilty" at a

21  disciplinary hearing regarding this incident.  (Id. ¶ 141.)

22      14.    April 1, 2011:  Denial of medication

23      On April 1, 2011, Defendant Dr. Ding refused to renew Plaintiff's pain medication in

24  retaliation for Plaintiff's complaints.  (Id. ¶ 135.)

25      15.    April 5, 2011:  Delay of Plaintiff's medical appeal

26      At some point during the course of these events, Plaintiff filed an "emergency medical

27  appeal."  On April 5, 2011, Defendant Rivera, RJD's health care appeals coordinator, delayed

28  ruling on Plaintiff's grievance and informed him that it would not be processed until June 2,

2011.  (Id. ¶¶ 136-137.)

16.    April 11, 2011:  Plaintiff reports food contamination to Defendant Kennedy

On April 11, 2011, Plaintiff and other inmates found feces in their oatmeal and notified Defendant Sgt. Kennedy, who told them that "he would log it in the Building #6 log book[.]" (Id. ¶ 140.)

17.    May-September 2011:  Ongoing denial of medical treatment

Plaintiff alleges a number of incidents during this period in which he was denied an adequate level of medical care.

On May 7, 2011, Defendant R/N Pulido denied Plaintiff medical treatment and refused to send him to the hospital.    (Id. ¶ 144.)

On May 8, 2011, Defendant R/N Lacorom refused to send Plaintiff to the hospital.  On that same day, Defendant C/O Casillas refused to allow Plaintiff to use the restroom to produce a stool sample requested by Defendant Lacorom.    (Id. ¶ 146.)

On May 9, 2011, Plaintiff complained to Defendant R/N Jane Doe about the food contamination and his symptoms, and the Doe defendant refused to do anything.    (Id. ¶ 147.)

On May 12, 2011, Plaintiff complained to Defendant R/N Sanchez about the food contamination and his symptoms, and Defendant Sanchez refused to send him to a hospital. (Id. ¶ 148.)

On May 13, 2011, Plaintiff had an appointment with Defendant Nurse Practitioner Serfullah, at which he "complained about [his] symptoms and how [he] was poisoned by the general population inmates."  (Id. ¶ 149.)   Defendant Serfullah refused to acknowledge Plaintiff's complaints.  (Id.)

On June 8, 2011, Defendant experienced heart and abdominal pain, and Defendant Pualido refused Plaintiff treatment, instead telling him to fill out a sick call slip.  (Id. ¶ 149.)

On June 27, 2011, Plaintiff was seen by Defendant Physician's Assistant Akbari.  Plaintiff complained about the food contamination, and Defendant Akbari told Plaintiff that he would look into it.  (Id. ¶ 156.)  On July 11, 2011, Plaintiff was called back by Defendant Akbari and Defendant Dr. Martinez, who told Plaintiff that "it's all in your head, there's nothing wrong with

1  you." (Id. ¶ 157.)

2      On September 4, 2011, Defendant Pulido told Plaintiff that he would call Defendant Dr.

3  Walker, and would be seen by a doctor "in a week or so." (Id. ¶ 158.)

4      On September 30, 2011, Plaintiff experienced heart and abdominal pain and was taken

5  to the central infirmary. Upon his arrival, he encountered Defendant R/N Gambel, who became

6  hostile and began interfering with the nurse who was triaging Plaintiff. Defendant Gambel told

7  Plaintiff: "[J]ust continue suing me and see if I give you medical treatment." Plaintiff was then

8  ordered to leave the infirmary. (Id. ¶ 163-164.)

9  **II.    Defendants' Motion to Dismiss**

10     **A.    Defendants' Arguments**

11     Defendants seek dismissal of Plaintiff's First Amended Complaint on the grounds that:

12  (1) Plaintiff's First Amended Complaint violates FED.R.CIV.P. 18(a) and 20(a); (2) Plaintiff has

13  failed to state a claim as to several Defendants and: (3) several of Plaintiff's claims require

14  dismissal for failing to exhaust his administrative remedies.

15     **B.    Fed.R.Civ.P. 18(a) and 20(a)**

16     Rule 18(a) states that a party "asserting a claim . . . may join, as independent or alternative

17  claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20(a)(2)

18  states that different defendants may be joined in one action if:

19      (A) any right to relief is asserted against them jointly, severally,
20      or in the alternative with respect to or arising out of the same
        transaction, occurrence, or series of transactions or occurrences;
        and

21      (B) any question of law or fact common to all defendants will
22      arise in the action.

23  Fed. R. Civ. P. 20(a)(2). Here, it is clear that Plaintiff's claims "arise out of a systematic pattern

24  of events." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (1997). All of Plaintiff's claims arise out

25  of his initial claims of food contamination and the various medical ailments which he claims he

26  suffers from as a result of the alleged food contamination. In addition, there are common

27  questions of fact and law as Plaintiff's claims arise under the First, Eighth and Fourteenth

28  Amendments. Therefore, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's claims

1    or sever any of the claims pursuant to FED.R.CIV.P. 18(a) and 20(a).

2        **C.    FED.R.CIV.P. 12(b)(6) Standard of Review**

3        A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory'

4    or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v.*

5    *Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri*

6    *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's

7    complaint must provide a "short and plain statement of the claim showing that [he] is entitled

8    to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need

9    only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it

10   rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks

11   omitted).

12       A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state

13   a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

14   (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

15   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .

17       In addition, factual allegations asserted by pro se petitioners[1], "however inartfully

18   pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines*

19   *v. Kerner*, 404 U.S. 519-20 (1972). Because "*Iqbal* incorporated the *Twombly* pleading standard

20   and *Twombly* did not alter courts' treatment of *pro se* filings, [courts] continue to construe pro

21   se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 &

22   n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).

23       **D.    Application to Plaintiff's First Amended Complaint**

24            1.    Personal Causation

25       Defendants Williams, Flourney, Allamby, Gonzalez, Gernoma, Camarena, Ochoa, Rink,

26   Kennedy, Sampson and Pauly move to dismiss themselves from this action on the grounds that

27

28
       _____
            [1] While Plaintiff is now represented by counsel (ECF No. 86), at the time he filed this action and
       at the time he filed his First Amended Complaint, he was acting in *pro se*.

1   Plaintiff has not "made any factual allegations" against them. (*See* Defs.' Memo of Ps & As in
2   Supp. of MTD at 10.)  As to Defendant Kennedy, Defendants' Motion is denied as Plaintiff does
3   allege some factual allegations regarding Defendant Kennedy. (*See* FAC ¶ 140.)  In their Reply,
4   Defendants for the first time acknowledge that Plaintiff did allege some factual allegations as
5   to Defendant Kennedy and argue that Plaintiff has failed to state a claim against Defendant
6   Kennedy.  Defendants cannot raise a new argument for the first time in a Reply, and thus,
7   Defendant Kennedy's Motion to Dismiss the claims against him for failing to state a claim is
8   **DENIED**.

9        A person deprives another "of a constitutional right, within the meaning of section 1983,
10   if he does an affirmative act, participates in another's affirmative acts, or omits to perform an
11   act which he is legally required to do that causes the deprivation of which [the plaintiff
12   complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  "Causation is, of course, a
13   required element of a § 1983 claim."  *Estate of Brooks v. United States*, 197 F.3d 1245, 1248
14   (9th Cir. 1999).  "The inquiry into causation must be individualized and focus on the duties and
15   responsibilities of each  individual defendant whose acts or omissions are alleged to have caused
16   a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo
17   v. Goode*, 423 U.S. 362, 370-71 (1976)); *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir. 1986).
18   Here, the Court finds that Plaintiff has failed to state any facts that would hold Defendants
19   Williams, Flourney, Allamby, Gonzalez, Gernoma, Camarena, Ochoa, Rink, Sampson and Pauly
20   liable for the alleged deprivation of his constitutional rights.

21        Therefore, Defendants Williams, Flourney, Allamby, Gonzalez, Gernoma, Camarena,
22   Ochoa, Rink, Sampson and Pauly's Motion to Dismiss the claims against them found in
23   Plaintiff's First Amended Complaint for failing to state a claim pursuant to FED.R.CIV.P.
24   12(b)(6) is **GRANTED**.

25            2.    Defendant Walker

26        Defendant Walker moves to dismiss the claims against him on the grounds that, while
27   there are a few factual allegations pertaining to Defendant Walker, none of the allegations rise
28   to the level of a constitutional violation.  (*See* Defs. Memo of Ps & As in Supp. of MTD at 10-

11.)  In his First Amended Complaint, the only allegations against Defendant Walker are Plaintiff's claims that he was examined by a nurse who told Plaintiff that the nurse would contact Defendant Walker.  (*See* FAC at 19.)   There are no factual allegations from which the Court could reasonably find that Defendant Walker was in any way involved in the alleged violation of Plaintiff's constitutional rights.  Accordingly, Defendant Walker's Motion to Dismiss the claims against him in Plaintiff's First Amended Complaint for failing to state a claim is **GRANTED**.

### 3.    Voluntary dismissal of Defendants

Plaintiff has consented to the dismissal of some of the Defendants listed above, as well as other named Defendants.  Specifically, Plaintiff has agreed to the dismissal of Defendants Allamby, Rink, Camarena, Wall and "Library II Assistant" without prejudice.  (*See* Pl.'s Opp'n to MTD at 42.)  In addition, Plaintiff has agreed to the dismissal of Defendants Casillas, Chance, Ding and Sampson with prejudice.  (*Id.*)  Thus, the Court will order the dismissal of these Defendants and will enter judgment for Defendants Casillas, Chance, Ding and Sampson pursuant to FED.R.CIV.P.  54(b).

### 4.    Claims against Defendant Rivera

Defendant Rivera seeks to dismiss Plaintiff's claims against him on the grounds that he cannot hold Defendant Rivera liable for the way in which he handled Plaintiff's grievances.  (*See* Defs.' Memo of Ps & As in Supp. of MTD 21-22.)  The only allegations pertaining to Defendant Rivera are Plaintiff's allegations that Defendant Rivera refused to process Plaintiff's health care grievance as an emergency which Plaintiff claims was required by prison regulations.  (*See* FAC ¶¶ 136-37.)

The Fourteenth Amendment provides that:  "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).  State statutes and prison regulations may grant prisoners liberty or property interests sufficient to invoke due process protection. *Meachum v. Fano*, 427 U.S. 215,

223-27 (1976).  To state a procedural due process claim, Plaintiff must allege:  "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process."  *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000).

However, the Ninth Circuit has held that prisoners have no protected *property* interest in an inmate grievance procedure arising directly from the Due Process Clause.  *See Ramirez v. Galaza*, 334 F.3d 850, 869 (9th Cir. 2003) ("[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure") (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure")); *accord Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (1995);  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

In addition, Plaintiff has failed to plead facts sufficient to show that a prison official deprived him of a protected *liberty* interest by allegedly failing to respond to his prison grievances in a satisfactory manner.  While a liberty interest can arise from state law or prison regulations, *Meachum*, 427 U.S. at 223-27, due process protections are implicated only if Plaintiff alleges facts to show that Defendants:  (1) restrained his freedom in a manner not expected from his sentence, and (2) "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th Cir. 1997).  Thus, to the extent Plaintiff challenges the procedural adequacy of inmate grievance procedures, his First Amended Complaint fails to state a claim.  Defendant Rivera's Motion to Dismiss the claims against him pursuant to FED.R.CIV.P. 12(b)(6) is **GRANTED**.

### 5.   Verbal Harassment

Defendants seek dismissal of claims of verbal harassment and argue that Plaintiff "alleges that numerous defendants swore at him, and were insensitive."  (Defs. Memo of Ps & As in Supp. of MTD  23.)  Standing alone, the Court agrees that a claim of verbal harassment or verbal abuse by prison officials generally does not constitute a violation of the Eighth Amendment.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (harassment does not constitute an Eighth Amendment violation); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (harassment

in the form of vulgar language directed at an inmate is not cognizable under § 1983); *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (verbal threats and name calling are not actionable under § 1983).

Thus, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Eighth Amendment verbal harassment claims pursuant to FED.R.CIV.P. 12(b)(6).

### 6.    Eighth Amendment claims against Defendants Lacurom and Sanchez

Defendants Lacurom and Sanchez move to dismiss the Eighth Amendment deliberate indifference to serious medical need claims against them. (*See* Defs.' Memo of Ps & As at 25-26.) Plaintiff alleges that he sought treatment from Defendant Lacurom and Sanchez on May 8, 2011 and May 12, 2011. (*See* FAC ¶¶ 146-148.) In each instance, Plaintiff alleges that he requested to be transferred to a hospital but both Defendants refused to transfer Plaintiff. (*Id.*)

Where an inmate's claim is one of inadequate medical care, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Id*. at 1059-60. By establishing the existence of a serious medical need, an inmate satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with a prescribed course of medical treatment, or it may be shown by the way in which prison medical officials provide necessary care. *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988). Before it can be said that a inmate's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be

substantial.   Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

While Plaintiff may be able to allege additional facts to support an Eighth Amendment claim against these two Defendants, he currently only pleads facts that demonstrate a difference of opinion.  A  mere difference of opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).  Here, Plaintiff believes that he should have been transferred to a hospital but he fails to allege any other facts to show that Defendants Lacurom or Sanchez were deliberately indifferent to his serious medical need simply because they did not follow his requests.  He does not allege that they refused to treat him in another manner, only that they would not recommend him for a transfer to a hospital.  Thus, the Court **GRANTS** Defendants Lacurom and Sanchez's Motion to Dismiss for failing to state an Eighth Amendment claims pursuant to Fed.R.Civ.P.  12(b)(6) without prejudice.

7.      Fourteenth Amendment claims against Defendant Garza

Plaintiff alleges that Defendant Garza violated his due process rights during his disciplinary hearing by refusing to allow his witnesses to testify on his behalf. (*See* FAC ¶¶ 106-107.)

As previously stated, the Due Process Clause prohibits states from "depriving any person of life, liberty, or property, without the due process of law."  U.S. Const. amend. XIV.  The procedural guarantees of due process apply only when a constitutionally-protected liberty or property interest is at stake. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974).  In order to invoke the protection of the Due Process Clause, Plaintiff must first establish the existence of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 125 S.Ct. 2384 (2005); *Sandin*, 515 U.S. at 472.  In *Sandin*, the Supreme Court "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardship caused by the prison's challenged action relative to the 'basic conditions' of life as a prisoner." *Mitchell v. Dupnik*, 75 F.3d 517, 522 (9th Cir. 1996) (citing *Sandin*, 515 U.S. at 484);

*McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002) (noting that *Sandin* abandons the mandatory/permissive language analysis courts traditionally looked to when determining whether a state prison regulation created a liberty interest which required due process protection).

Thus, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 125 S.Ct. at 2394. The *Sandin* test requires a case-by-case examination of both the conditions of the prisoner's confinement and the duration of the deprivation at issue. *Sandin*, 515 U.S. at 486.

The Court must determine whether Plaintiff has established a protected liberty interest, and thus, under *Sandin*, the Court must determine whether the disciplinary hearing purportedly resulting in disciplinary segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Court found there were three factors to consider when determining whether disciplinary segregation imposes atypical and significant hardship: "(1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment"; and the length of the plaintiff's sentence was not affected." *Jackson v. Carey*, 353 F.3d 750, 755 (quoting *Sandin*, 515 U.S. at 486-87).

Here, Plaintiff alleges no facts that would satisfy any of the factors found in *Sandin*. While Plaintiff alleges there were violations in the due process of the hearing itself, he fails to allege facts sufficient to show that the outcome of the hearing resulted in an "atypical and significant hardship" on Plaintiff. Accordingly, Defendant Garza's Motion to Dismiss Plaintiff's Fourteenth Amendment claims against him is **GRANTED** pursuant to FED.R.CIV.P. 12(b)(6).

**E.    Standard of Review per FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a)**

Defendants move to dismiss a number of claims in Plaintiff's First Amended Complaint on the grounds that some claims should be dismissed for failing to exhaust available administrative remedies pursuant to FED.R.CIV.P. 12(b) and 42 U.S.C. § 1997e(a).

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Compliance with the exhaustion requirement is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Section 1997e(a) "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.* at 532; *see also Booth v. Churner*, 532 U.S. 731, 739-40 & n.5 (2001) (requiring exhaustion regardless of whether the specific remedy sought by the prisoner is "available" within the administrative grievance procedure).  However, non-exhaustion under § 1997e(a) is an affirmative defense, and Defendants carry the burden of raising and proving its absence. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (same).

Following the December 28, 2011 hearing on the exhaustion issue, the Court found that Plaintiff had satisfied the exhaustion requirement with respect to his food contamination claims. (ECF No. 85 at 7-8.)  In addition, at that hearing, Defendant Rivera testified, and the Court found that Plaintiff had exhausted his claim that he received inadequate medical attention for health problems resulting from the allegedly contaminated food.  (Id. at 3, 8.)

Defendants do not dispute these conclusions in their present motion.  Defendants indicate that their argument in support of finding a failure to exhaust administrative remedies "does not address food contamination" and they "concede the Porter has exhausted his claim that he was denied medical care resulting from the consumption of contaminated food."  (Defs.' Reply in Supp. of MTD at 7, 8.)  However, Defendants argue that "the scope of that exhaustion [relating to Plaintiff's medical treatment claims] has not been defined, and many of [Plaintiff's claims] do not pertain to inadequate medical care from consumption of contaminated food, but to medical care generally." (Id. at 9.)

Defendants list seventeen (17) instances in their moving papers in which they claim Plaintiff failed to exhaust his administrative remedies.  (*See* Defs. Memo of Ps & As in Supp. of MTD at 14-20.)  However, despite conceding that with regard to some of these claims the

1   Court has since found exhaustion on the part of Plaintiff, there are now twenty-four (24)

2   instances in their Reply in which they argue Plaintiff failed to exhaust his administrative

3   remedies. (*See* Defs. Reply in Supp. of MTD at 8-10.) Because it appears that Defendants have

4   added additional arguments regarding exhaustion in their Reply, the Court will not consider

5   those arguments as they were not properly raised in the initial Motion.

6        It is extremely difficult for the Court to discern which claims the Defendants claim are

7   exhausted and which ones they argue are not exhausted.  It appears that the Defendants

8   distinguish the Court's previous finding of exhaustion by arguing that the claims related to

9   inadequate medical care are exhausted but the claims of deliberate indifferent to serious medical

10  needs by individual defendants have not been exhausted. (*See* Defs.' Memo of Ps & As in Supp.

11  of MTD at 14-21.)  Yet, there is insufficient support in their moving papers to explain how they

12  came to this categorization of Plaintiff's medical claims.  In support of this argument,

13  Defendants have supplied the Declaration of  L. Zamora, Chief of the Office of Third Level

14  Appeals Healthcare.  (*See* L. Zamora Declaration, ECF No. 80-3.)  However, while this

15  declaration supplies the Defendants' response to Plaintiff's grievances, they fail to supply the

16  actual grievances filed by Plaintiff.  Thus, the Court simply cannot determine the scope of the

17  allegations presented by Plaintiff in his initial grievances that were filed and whether they relate

18  to the claims in Plaintiff's First Amended Complaint.

19       Defendants also argue as to some of the claims that Plaintiff has not "alleged filing an

20  administrative appeal." (*See* Defs. Memo of Ps & As in Supp. of MTD at 14.)  However, the

21  "failure to exhaust [under § 1997e(a)] is an affirmative defense ...[and] inmates are not required

22  to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S.  at 216.

23  Instead, it is Defendants who must "demonstrate" Plaintiff's failure to exhaust, by providing

24  documentary evidence, including affidavits, which serve as proof of Plaintiff's administrative

25  grievance records and do more than simply "describe the inmate appeals process." *Id.*; *Wyatt*,

26  315 F.3d at 1119-20  (9th Cir. 2003) (noting  defendant prison officials' "superior access to

27  prison administrative records in comparison to prisoners, especially, as is often the case, when

28  prisoners have moved from one facility to another.").   Here, the Court finds that Defendants

1   have not carried their burden with regard to any of Plaintiff's Eighth Amendment medical issues

2   pursuant to *Wyatt* or *Jones.*

3        In addition, some of the arguments raised by Defendants relate to claims or Defendants

4   who have either been voluntarily dismissed or the Court has dismissed claims against them for

5   the reasons stated above.  *See* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face,

6   frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

7   relief from a defendant who is immune from such relief,  the court may dismiss the underlying

8   claim without first requiring the exhaustion of administrative remedies.")  Thus, the Court need

9   not consider whether Plaintiff adequately exhausted his administrative remedies as to Defendants

10   Garza, Allamby, Rink, Camarena, Wall, Casillas, Chance, Ding, Sampson, Rivera, Walker as

11   those Defendants have been dismissed from this action.

12        Finally, Defendants claim that Plaintiff did not exhaust claims as to a number of other

13   issues including claims of retaliation and interference with his mail.  (Defs. Memo of Ps & As

14   in Supp. of MTD at 16-20.)  Defendants contend that Plaintiff has attached an "unprocessed

15   administrative appeal marked as Exhibit 12 to his First Amended Complaint" but the "appeal

16   was not received by the appeals office, and there is no reason to believe that Porter actually

17   submitted it."  (Id. at 17.)   There are actually several administrative grievances attached as

18   Exhibit 12 to Plaintiff's First Amended Complaint and Defendants are correct that there do not

19   appear to be any markings to indicate whether Defendants received these grievances.  However,

20   what Defendants fail to note is the "Inmate Appeal Assignment Notice" attached to Plaintiff's

21   First Amended Complaint (ECF No. 66-2 at 55) in which Defendant Cobb acknowledges receipt

22   of Plaintiff's appeal and notes the appeal as "staff complaints."  In the declaration submitted by

23   Defendant Cobb, there is no mention of this grievance regarding "staff complaints" that was

24   given Log No. RJD-2-11-00234.  It is listed in the tracking log attached to Defendant Cobb's

25   Declaration (ECF No. 80-4 at 8) and there is an entry showing that the disposition at the Second

26   Level of Review was "granted in part."  It is not clear to the Court whether this particular

27   grievance regarding "staff complaints" are related to issues raised by Plaintiff in these grievances

28   attached to his First Amended Complaint and thus, the Court finds that the Defendants have

failed to meet their burden of providing a full record with regard to exhaustion. Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for failing to exhaust his administrative remedies pursuant to FED.R.CIV.P. 12(b) is **DENIED**. However, the Court will deny Defendants' Motion without prejudice to reassert it in a later motion. Defendants are cautioned that they must provide a full and complete record with regard to this issue.

## III.    Remaining Defendants

A review of the Court's docket indicates that Plaintiff has failed to properly serve Defendants Chavez, John Doe Facility 2 Law Library Assistant, Jane Doe RN Nurse and Serfullah. *See Walker v. Sumner,* 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with sufficient information to effect service, the court's sua sponte dismissal of those unserved defendants is appropriate under FED.R.CIV.P. 4(m)).

Accordingly, this Court ORDERS Plaintiff to show cause *no later than thirty days (30) after this Order is filed*, why the claims against these Defendants should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m). If Plaintiff wishes to proceed with his claims against these Defendants he must provide the Court with proof of proper service within **thirty (30)** days from the date this Order is filed. Otherwise, Defendants Chavez, John Doe Facility 2 Law Library Assistant, Jane Doe RN Nurse and Serfullah will be dismissed from this action without prejudice.

## III.    Conclusion and Order

Based on the foregoing, the Court hereby:

(1)    **GRANTS** Plaintiff's request to voluntarily dismiss Defendants Allamby, Rink, Camarena, Wall and Facility 2 Law Library Assistant from this action without prejudice. The Clerk of Court is directed to terminate these Defendants from the docket.

(2)    **GRANTS** Plaintiff's request to voluntarily dismiss Defendants Casillas, Chance, Ding and Sampson from this action with prejudice. Because there is no just reason for delay, the Court directs the Clerk of Court to enter judgment on behalf of these Defendants pursuant to FED.R.CIV.P. 54(b) and terminate these Defendants from the docket.

/ / /

(3)     **DENIES** Defendants' Motion to Sever or Dismiss Plaintiff's First Amended Complaint pursuant to FED.R.CIV.P. 18(a) or 20(a);

(4)     **DENIES** Defendant Kennedy's Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6);

(5)     **GRANTS** Defendants Williams, Flourney, Allamby, Gonzalez, Gernoma, Camarena, Ochoa, Rink, Sampson, Pauly, Walker, Rivera, Lacurom, Sanchez and Garza's Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6);

(6)     **GRANTS** Defendants' Motion to Dismiss Plaintiff's verbal harassment claims pursuant to FED.R.CIV.P. 12(b)(6);

(7)     **DENIES** Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for failing to exhaust his administrative remedies pursuant to FED.R.CIV.P. 12(b) without prejudice.

(8)     Plaintiff has thirty (30) days from the entry of this Order to file a Second Amended Complaint to correct the deficiencies of pleading identified in the Court's Order.  If Plaintiff chooses to file a Second Amended Complaint it must be complete in itself without reference to his previous Complaints.  Defendants not named and all claims not re-alleged in the Second Amended Complaint will be deemed to have been waived.

Plaintiff can also choose not to file a Second Amended Complaint and instead this action can go forward on the remaining claims. If Plaintiff chooses this option, he has thirty (30) days to file a Statement indicating his desire to move forward with the remaining causes of action found in his First Amended Complaint and the Court will issue an Order directing Defendants Neotti, Hernandez, Seeley, Martinez, Choo, Scharr, Gambel, Estrada, Pulido, Cobbs, Strickland, Jones, Alvarado, Rodriguez, Le, Davis, Martinez, Wilson, Romero, Marquez, Kennedy and Akbari to file an Answer to Plaintiff's First Amended Complaint.

**IT IS FURTHER ORDERED that**:

(9)     Plaintiff must show cause no later than **thirty (30)** days from the date this Order is filed why the claims against Defendants Chavez, John Doe Facility 2 Law Library Assistant, Jane Doe RN Nurse and Serfullah should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m).  If Plaintiff fails to provide the Court with documentation demonstrating

1  proper service on these Defendants within **thirty (30)** days from the date this Order is filed,  the

2  claims against them in this  action will be dismissed without prejudice.

3  **IT IS SO ORDERED**.

4

5  DATED:  February 6, 2013

6                                                    _____
                                                     BARRY TED MOSKOWITZ, Chief Judge
7                                                    United States District Court

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28